Good morning, Your Honors. Margaret Toledo from Orrick, Harrington, and Sutcliffe, appearing on behalf of petitioner-appellant Guyenne Mkrtchyan, I would like to reserve two minutes of my time for rebuttal. The freedom to practice one's religion is a fundamental human right. The United States protects refugees who have fled their country on the account of their religious beliefs and persecution because of their religious beliefs. Religious minorities are most at risk of religious persecution at the hands of the government. Ms. Mkrtchyan is entitled to asylum because of the severe physical and emotional pain that she suffered in Armenia on account of her faith as a Jehovah's Witness. Well, let's kind of cut to the chase on this. I think that this really has to turn on the credibility finding here. And, you know, for purposes of argument, let's assume that, you know, if, I mean, obviously if a woman's raped as a result of persecution for being a Jehovah's Witness, that's going to get her, you know, to the place of under our case law where she can establish past persecution. But you have an adverse credibility finding here. And there are inconsistencies in the testimony with regard to dates where she's off in terms of years. I think that the I.J. had difficulty with what the I.J. termed to be vagueness in the testimony about, say, the critical incident of the rape. And also I think that the I.J. had concerns about whether it was on account of. But let's just, on the adverse credibility, on the dates, you know, you've got a number of places where she's off by a year. And some of the being off by a year would put her in a problem where the incident with Sister Gohar, if she's off by a year, depending on which year you believe, she wouldn't have been able to be present when the Sister Gohar incident occurred. I think in her asylum application she says the beating and assault. And then when she later describes the rape, she describes it in terms of she was unconscious and that the doctors told her that she was raped as opposed to her having any recollection. Do you want to address some of the, you know, because we would have to be compelled to find it otherwise, or it hasn't not supported by substantial evidence. And if, I guess what I'm saying, why aren't there two ways that you can look at this testimony? Dr. Jane Woodcock Well, walking specifically through the adverse credibility finding, which is in the record starting at A.R. 48 to 49, and the I.J. found that there was a lack of detail on significant events and discrepancies as to key dates as to the first detention and when she went back and forth to Armenia and Russia. And on those points she made an adverse credibility finding. As we've set forth in our brief, it's not exactly clear what those points are because she then goes on to talk about a need for more details with respect to the attack at work, her beliefs as a Jehovah's Witness and the difficulty with regard to the rape. And I think in this case, the date discrepancies I don't think go to the heart of her claim. And in fact, when she testifies, she testifies consistently, both in her application and then on direct, that the incident at Sister Gohar's house occurred in 1993. The dates are not significant. She's testifying nine years later, and there is consistency. The only inconsistency comes up on cross-examination when she gets confused. Of course, she is testifying through a translator. There are multiple instances in the transcript where the translator gets the dates wrong and they are corrected, such as when she says how old she is. Well, she gives off by a year regularly, it seems to be. But when she says she was baptized in March or April of 1992, when she says that, that would mean that she was baptized before she met Sister Gohar. But then she also says that Sister Gohar is the person that introduced her to the religion. And then when she gets mixed up on the dates on another incident, one interpretation of it would mean that she couldn't have been present when Sister Gohar was attacked. So that's, you know, I'm seeing two interpretations there, but also in terms of the IJ is there listening, and the IJ takes one interpretation saying, well, I think that you got the dates wrong because you're not telling the truth. And, you know, whether you know, I think Sister Gohar's attack is significant in that it links into the on account of, you know, in terms of the why that these women, if they were being raped because they were Jehovah's Witness. Just responding to whether the dates really go to the heart of the claim, which is, I think, part of your question, because she is off by a year. I don't think that given the consistency between the asylum application and her testimony as to specifically what happened and what was said by the police during the attack, I think it's difficult to then say that the dates go to the heart of the claim. And actually the IJ didn't find that she was concerned that she actually wasn't there and was in Russia when the attack happened at Sister Gohar's house. She just expressed, I think, a frustration with the date inconsistencies both as to Sister Gohar's house and then subsequently her return to Armenia from Russia. One date, though, that she's... Counsel, I was going to say, I think you need to cover all the issues that were raised by the IJ. But there are other issues also, like her statement that she was assaulted and beaten and not mentioning the rape in her initial application. Is it your position that the use of the word assaulted meant sexually assaulted? Yes, that is correct. Okay, we'll go ahead. No, just go ahead. I'm just saying, I think you should try to address all of the issues, not simply the dates. Looking at all of the components of the adverse credibility finding, the IJ said there was a lack of sufficient detail, and she did express concern about the application using the word beaten and assaulted, and that being inconsistent with her testimony that she was raped, that this was confirmed by a gynecological exam. That finding, by her own assessment, or to the extent it is an adverse credibility finding, isn't supported by substantial evidence on this record. In fact, the IJ did not give full credence to the asylum application, which had a detailed account of the November 15th event. As to the other details, I mean, if we just took the November 15th, 1998 event, that is a very significant event, even if the rape were to be discredited. She gave significant, consistent testimony, both in her asylum application and then on the stand, about what happened that night of November 15th, about what was said, which linked it back to being on account of her religion. And that is the heart of her claim, that she was attacked, physically assaulted, whether it was rape or not, although the record does support, in English, the use of the word assault means rape. This was through a translator, her asylum application. I'm curious, just from the standpoint, I know that there are issues, you know, there's always the argument that a woman would be hesitant to report a rape, but she does say that Sister Gohar was raped, and then she uses rape for Sister Gohar, and she uses assault for herself. The translator used rape and assault. It's a translated asylum application. But she doesn't ever say, I said, she says she said assault for her application, doesn't she? She said it should have been in there. When she's asked, why is it not in your application, she answers that, well, that should have been in there, that she was raped. Her hearing testimony was when she was asked, why didn't the application say that you were raped, she said it should have been in there. Yes. Correct? Correct. That was her hearing testimony. All right, I'll give you a minute on rebuttal. Thank you. I just have one point to clarify. Go ahead. It'll just take a moment. My understanding is that the immigration judge made the negative credibility finding relating to the specificity of the beating and rape incident, and on general vagueness, and noted the date inconsistencies, but that the IJ never made a negative credibility finding as to whether or not she was a Jehovah's Witness. That is correct. There is a sentence in which she expresses that she has difficulty finding. She expresses skepticism, but does not make a negative credibility finding on that particular issue, correct? Correct. So under our precedent, even though there was no confirming testimony that the particular petitioner went to halls to practice that religion or did it in homes in Armenia or in the U.S., am I correct that we have to accept the petitioner's testimony about being a Jehovah's Witness as correct, because there was no negative credibility determination on that? That is correct, both under the Code of Federal Regulations that apply to this case and then under the case law, that it must be deemed true. Okay. Good morning. Good morning, Your Honors. May it please the Court, I'm Shanahi Coleman, and I represent the appellee Alberto Gonzalez in this matter. The petition for review should be denied because the Board of Immigration Appeals properly affirmed the decision of the immigration judge's denial of asylum, withholding of removal, and relief under the Convention Against Torture. Well, now, on the, let's see, on the voluntary departure, the 60-day, do you concede that that was wrong, changing the voluntary departure? Your Honor, the voluntary departure? Well, wasn't there, the BIA, didn't they have to, under Padilla Padilla, wasn't there an error there? There was a, they have to, pursuant to Padilla Padilla, doesn't the panel, don't they have to reimpose the 60-day period for voluntary departure, reimposed by the IA, IJ, didn't they change that? I'm not familiar with it, but my understanding is that she was, that to the extent that she requested to stay in the country pending the decision of this Court, that that was unopposed by the government. The BIA shortened the period of voluntary departure from what the IJ did, and Padilla Padilla says the BIA has to, the BIA couldn't do that in a summary affirmance. You may not be prepared to address that. Why, if you need to, you can, you know, we'll call for briefing, but I would really like you to address the negative credibility determination issue. Yes, Your Honors. With respect to the negative credibility determination, we take the position that there was a negative credibility finding as to all of the matters that were discussed in the IJ's decision. With respect to the decision, it's Well, let's take just specifically, let's take the fact that she's a Jehovah's Witness. Now, is it your position that the IJ made a negative credibility determination on that? Yes, Your Honor. The IJ made, used the specific words negative credibility finding on page 49 of the record, and the IJ made a negative credibility determination. I think it's important to bear in mind that these IJ decisions are oral decisions. They may not be the best organized. However, the IJ went into very specific detail with respect to the discrepancies in the date and the vagueness of the testimony, and discussed those I know the IJ, the IJ in the oral decision made an express negative credibility determination on page 49 of the record. On the issue of the vagueness and in the beatings and the rape and the dates. But I didn't see where the IJ made an express negative credibility determination on her being a Jehovah's Witness. I saw the IJ express skepticism, but not make an express determination. So if you have a place in the record where you think that was done, tell me, tell me what you're citing to. Your Honor, I would cite throughout the entire decision to the extent that the IJ went into detail as to the discrepancies that those were all negative credibility findings, regardless of whether the specific word we are making a negative credibility finding here. There's no requirement that those specific words be used within each paragraph as the IJ is going through and talking about how there's a one-year difference between when she said she was baptized and when she was actually baptized. The IJ goes into great detail with respect to the discrepancies between her alleged status as a Jehovah's Witness and her inconsistent statements regarding her membership in that church. With respect to her worship here in the United States, she testified that she worshiped at Kingdom Hall. She did not know the address of Kingdom Hall. To the extent that there were... Didn't she say that someone else, didn't she say someone else took her there and she knew how to get there? Your Honor, in the media... Someone not knowing a street address might not be persuasive to mean they never went there. Well, Your Honor, to the extent that she's alleging that she's participating in this religion and there was an adverse credibility finding, there's the expectation that there should be some corroborating evidence of her membership in the church. And this Court has taken the position that membership in a church is a very easy thing to establish through certificates for baptism, perhaps canceled checks for donation to the church. She does have the blood card from Russia, correct? The no transfusion card. And, you know, I have to say, I think that's the best evidence that she presents. And it's, you know, arguably, I don't know why someone would carry a card like that unless that's what they believe. That's not a generally held belief. I mean, that's a clearly Jehovah's Witness belief. Your Honor, it's our understanding that she had such a card issued from Russia, but that she had not obtained such a card here in the United States. Well, I know, but I mean, most people don't have those. She testified that she didn't see the need for another card. And, you know, having a card even in Russian, I would say in most hospitals, it wouldn't be too hard to find someone who would be able to read a Russian card. But I guess the part of your argument that I'm having the most trouble with is the argument that we should view the IJ's decision as a negative credibility determination on every ‑‑ on all the issues, because I thought we had precedent that a negative credibility determination was required to be specific. Your Honor, this ‑‑ Go ahead. I didn't mean to interrupt. Well, I thought we had precedent that to the extent a negative credibility determination isn't specifically noted as to different parts of testimony, that we have to credit the testimony. Your Honor, our understanding is that the Hartooni case, which is relied upon by the petitioner, is very distinguishable from the case at bar. In the Hartooni case, the IJ in that case failed to make clear findings about Hartooni's specific claims, and that the IJ in that case put forth two general arguments with respect to credibility in that case. In this particular case, this is very different, because the IJ has gone through and very specifically talked about the discrepancies with respect to the Hartooni case. Her status as a Jehovah's Witness has gone into the fact that there's a one‑year discrepancy as to when she was baptized. The IJ went into very specific analysis of her inconsistent statements regarding the date and the reasons for her departure from Armenia. She's off by about a year there. Additionally, she ‑‑ the IJ made additional findings with respect to her statements regarding the alleged rape and how they were quite vague. The IJ made very specific information that she left Armenia, left her daughters in Armenia for six months while she vacationed. It's reasonable for the IJ to conclude that this is not the behavior of someone who believes that their daughters are subject to persecution or that women in this religion are subject to rape on account of membership in this particular religion. And the IJ also made very specific findings and analysis concerning how her claims of persecution and rape in this particular religion are not true. The IJ also made very specific findings concerning how her claims of persecution lack plausibility in light of the fact that she returned to Armenia on two prior occasions, once in 1995 and once in 1998. So with respect to the precedent that there need to be clear findings, that would be the Hartooni case, and this case is quite distinguishable from that case. Again, these are oral decisions that may not be well organized, but to the extent that the judge is going through and bringing all of these findings, there's a reason that the judge went through all of that analysis in the oral decision. Clearly, there were credibility issues. Counsel, I want to ask you something in terms of options that either the IJ has or that we have. First of all, if we're not sure of what the scope of the IJ's negative credibility determination is, I know that the IJ's testimony is true. I know I've seen cases where a panel has said they're only accepting the credibility determination as going so far, and beyond that, if they think the case is made out, that they're remanding for further proceedings, accepting her testimony as true. But, I mean, do we have the ability, if we're not confident in what the IJ has said, to make a case that the IJ's testimony is true? I mean, what is done to remand so that the IJ can clarify the scope of a negative credibility determination? Would that be within our authority? Second, was it within the authority of the IJ if the IJ wanted confirmation of her membership in the church to ask for further evidence on that and to continue the hearing so that she could submit such evidence? Your Honors, with respect to remanding for further clarification, it's our position that there were specific reasons that the IJ went through all of the discrepancies in her testimony and that these were not true. All right. But that's not what the Court asked you. If the Court doesn't buy your argument on that, does the Court have authority to remand for clarification? I believe the Court would have authority to remand for clarification. Then I also want an answer to my second question. Did the IJ have authority, if the IJ wanted corroboration, to continue the hearing with this petitioner and to ask her to present evidence of her membership in the church? I know you can't always get evidence from Armenia, but certainly she could have, with a continued hearing, presented evidence, other evidence relating to her purported participation in the United States. Does the IJ have that authority and is there any precedent about when an IJ is required to do that? The government's aware of no authority that would require the IJ to continue the hearing for purposes of collecting additional evidence. This would be the petitioner's burden to establish that she is eligible for asylum. And to the extent that she appeared at the hearing, presented only her testimony, did not have affidavits from anyone in the church here, no corroborating evidence here, that would be a burden on the petitioner. There's no authority that we're aware of that would require the judge to continue the hearing at that time. Similarly, if this were a case that had gone to a regular trial, a standard type of a trial, it would just make it difficult for docket control in terms of saying, well, this other side has not presented sufficient evidence, so I'm going to continue the trial or have yet another trial for you to bring forth additional evidence. This hearing was her opportunity to present her evidence, to meet her burden of establishing that she was eligible for asylum, and she did not establish that she was eligible for asylum. The IJ found that she was not credible and that there was no corroborating evidence to make it impossible. Well, what seems odd to me, and we may not have any authority on this, but if you credit her testimony, she did not have any authority to present her testimony. She clearly meets her burden, at least in my view. The government has argued otherwise that a rape and beatings because she's a Jehovah's Witness wouldn't be enough, but it seems to me if her testimony were credited, that she would meet her burden. And so I guess I have sort of a finer point on my question to you. What do you think would be the best way for the judge to determine if someone's testimony if credited would be adequate? Does the IJ have any duty to continue a hearing to permit corroboration if the IJ is making a negative determination because of the lack of it, or is it just all part of the petitioner's burden, you know, the way these things operate? It's our understanding that it is the petitioner's burden, and we'd also like to point out that we do not concede that if believed that her claims would rise to the level of persecution. With respect to the rape, she's not clear as to whether or not she was raped. The record at page 162 establishes that when the petitioner was asked whether she believed that she had been raped, she stated that the facts and consequences indicated that she had been raped. But how can you say it's not clear if you believe her testimony, or how can the government argue that when her testimony is that she lost consciousness, and so she isn't able to give details, but she specifically said she was taken to a hospital, and she said there was a gynecological examination that indicated it was rape. Why wouldn't that be specific enough? Your Honor, on page 163 of the record, she's asked whether or not she was conscious, and at line nine she says, I was conscious. So although her testimony is at line nine on page 163, I was conscious, she stated that she believed that she was raped because the police informed her that she had been raped after a gynecological examination. That's inconsistent with her testimony that she was conscious, but then she was later told by others that she had been raped. Maybe she did testimony both ways, but I thought she had said at one point that she lost consciousness. Is that not true? At page 163, line nine, she says, I was conscious. Line six, question, were you conscious? I realize you're saying that. I'm asking you if she didn't at a different point say that she lost consciousness. It's not my understanding. She's asked specifically at line six, you were conscious during that time. Line seven, answer, yes. Line eight, question, what kind of exam? Line nine, I was conscious. All right. Well, that's what it says there. Does it say anywhere else in the testimony that she says that she was unconscious? You know, we can look at the record. If you don't have it right at your fingertips, we can look at the record. Did you have any other questions, Judge Gould? No, I don't. All right. Thank you. Thank you, Your Honors. All right. I'll give you a minute for rebuttal unless any of the panel members want you further to expound. Thank you, Your Honor. Just on the last issue that Judge Gould raised, at page 163 of the record, she is saying she was conscious during her gynecological exam. My recollection, although I didn't find the page immediately, is that both in her asylum application and during her testimony, she does say that she was hit in the head and was unconscious during the rape and beating at her home on November 15th, 1998. As to this. That was my understanding, too. I do see that at page 163 of the record, she's talking about being conscious at the gynecological exam, not during the end of her beating. But I haven't been able to put my finger yet on the application or the testimony on the beating point. Are you able to give us that? At AR 127, at lines 15 and 16, she says, what did they hit you with? That's it. And this is where it says, quote, I had lost my consciousness. They hit on my face and my head. I don't remember anything else. I just woke up and I remember my daughters were crying. So that that is my recollection confirmed. And that's what I was asking government counsel to to point us to. So I'm glad we've finally gotten it here. So let me ask you the same question. I guess we don't have any precedent on this, according to government counsel. And maybe there shouldn't be any that supports the petitioner. But maybe there should be. So let me just ask you, doesn't IJ have any duty to give a continuance to permit corroborating evidence when the burden of proof is just not met because of a credibility debate? I'm not aware of precedent directly on that point. But the Shoah-Farah case at 228 Fed Third 1070 talks about the fact that an IJ has a duty similar to in a social security proceeding to fill in any gaps in the record and allow an opportunity for filling in those gaps. Unfortunately, in that. In social security cases, we have lots of precedent saying the IJ has a duty to develop the record. But in the immigration, does the IJ have a parallel duty? The Shoah-Farah case stands for that proposition. It does not address your question precisely about whether the proper remedy would be a continuance in that situation. It just states that there is a duty on the IJ to develop the record, particularly if the reason for not granting the petition is a lack of detail. As to the specific way that the IJ is supposed to allow that record to be developed, the Shoah-Farah case does not specifically address that. All right. Do you have any further questions, Judge Gould? No, I don't. All right. Then this matter will stand submitted. Thank you both for your argument. The next matter on calendar is United States of America v. Zachariah Dodge, case number 06-10150. Do we have a problem here? Did we lose someone? Judge Gould, are you still there? Oh, I'm here. I can see you and I can hear you. Oh, we can hear you, too. We just heard a phone line, and so I was concerned we'd lost you.
judges: T.G. Nelson, Gould, Callahan